SHARPE v ANGORA ENTERPRISES

Docket No. 114183. Submitted May 9, 1990, at Lansing. Decided
August 7, 1990. Leave to appeal applied for.

William J. Sharpe worked for Angora Enterprises, earning $200
per week, and for the Sault Area Schools, earning $280 per
week. He died as the result of a heart attack suffered while he
was herding goats on a farm owned by Angora. Elaine R.
Sharpe, his widow, filed a petition for benefits with the Bureau
of Workers' Disability Compensation, naming Angora as her
husband's employer. Angora did not maintain insurance for
workers' compensation benefits. Sharpe moved to add the Sec-
ond Injury Fund to her petition, alleging it was liable for 58.33
percent of the compensation benefits awarded. The referee
granted Sharpe $303.49 in weekly compensation benefits and
$1,500 reimbursement for her husband's funeral expenses. The
Second Injury Fund was ordered to pay sixty-two percent of the
weekly benefits and allowable funeral expenses directly to
Sharpe. The Second Injury Fund appealed to the Workers'
Compensation Appeal Board. The board refused to address
whether Sharpe established that Angora was an employer
subject to the workers' compensation act because the issue had
not been raised before the referee or the appeal board, ruled
that the referee had erred in ordering the Second Injury Fund
to pay its portion of the benefits awarded directly to Sharpe,
and affirmed the referee's decision insofar as it imposed liabil-
ity on Angora. Two orders were issued by the appeal board, one
affirming the referee's decision as to Angora but modifying the
amount of Sharpe's weekly compensation award, and the other
reversing the referee's decision with respect to the Second
Injury Fund. The Second Injury Fund was dismissed from the
action. Sharpe appealed by leave granted the order dismissing
the Second Injury Fund.

The Court of Appeals held:

Payments by the Second Injury Fund cannot be made di-
rectly to a claimant or an uninsured company. Payments are to

REFERENCES
Am Jur 2d, Workmen's Compensation §§ 408, 426-428, 659.
See the Index to Annotations under Workers' Compensation.

be made only to an employer's insurer or a self-insured employer. Since the workers' compensation act provision at issue, in its present form, precluded the Second Injury Fund from making payments directly to Sharpe, the order dismissing the Second Injury Fund from the action is affirmed.

Affirmed.

WORKERS' COMPENSATION — DUAL EMPLOYMENT — SECOND INJURY FUND — REIMBURSEMENT OF BENEFITS PAID.

The workers' compensation act provision dealing with the liability of employers in a dual employment situation requires that payments by the Second Injury Fund shall be made only to an employer's insurer or a self-insured employer; payments by the Second Injury Fund cannot be made directly to a claimant or an uninsured company; if there is no insurer and the company is not a self-insurer, the Second Injury Fund has no obligation to reimburse the employer for benefits paid to the claimant (MCL 418.372[1][b]; MSA 17.237[372][1][b]).

*Timothy S. Moher,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for Second Injury Fund.

Before: GRIBBS, P.J., and HOOD and T. J. LESINSKI,* JJ.

PER CURIAM. Plaintiff appeals by leave granted the December 14, 1988, order of the Workers' Compensation Appeal Board reversing the hearing referee's decision ordering the Second Injury Fund/Dual Employment Fund to pay sixty-two percent of compensation benefits resulting from the death of plaintiff's husband. The appeal board's order also dismissed the Second Injury Fund. We affirm.

On September 8, 1982, plaintiff's husband died as a result of a heart attack suffered while he was

_____

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

herding goats on a farm owned by Angora Enterprises in Chippewa County, Michigan. On June 28, 1983, plaintiff filed a petition for benefits with the Bureau of Workers' Disability Compensation. Plaintiff named Angora as her husband's employer and listed his weekly wages as: (1) $200 per week from employment with Angora; and (2) $280 per week from employment as a bus driver with the Sault Area Schools. Angora did not maintain any insurance for workers' compensation benefits.

Subsequently, plaintiff moved to add the Second Injury Fund to her petition alleging that the fund was liable for 58.33 percent of the compensation benefits awarded.

A hearing on plaintiff's petition was held before a referee on December 14, 1984. Angora did not answer the petition nor did it enter an appearance at the proceedings. Following the hearing, the referee issued a decision granting plaintiff $303.49 in weekly compensation benefits and $1,500 in reimbursement for her husband's funeral expenses. The referee also ordered the fund to pay sixty-two percent of the weekly benefits and allowable funeral expenses directly to plaintiff.

On April 19, 1985, the fund appealed the referee's decision to the appeal board. The fund alleged that the referee: (1) erroneously granted plaintiff compensation benefits since the evidence demonstrated that plaintiff's husband was an independent contractor rather than an employee of Angora; and (2) incorrectly ordered the fund to pay compensation benefits *directly* to plaintiff in contravention of MCL 418.372; MSA 17.237(372).

The two-member appeal board panel that reviewed the instant case reached different conclusions. Board member Jane S. Colombo found that plaintiff failed to establish that Angora was an agricultural employer subject to the Workers' Dis-

ability Compensation Act. Therefore, Angora was exempt from application of the act. Member Colombo also decided that the fund was not liable for benefits since plaintiff had not shown that Angora was subject to the workers' compensation act.

Alternatively, board member Kenneth Birch found that plaintiff established that Angora was an employer subject to the act and that her husband was an employee and not an independent contractor of Angora. In addition, board member Birch found that the referee properly ordered the fund to pay its portion of benefits directly to plaintiff.

Since the two-member panel could not reach a unanimous decision, a third member, Joseph V. Wilcox, was assigned pursuant to MCL 418.261(2); MSA 17.237(261)(2). This statute provides that, if a two-member appeal board cannot reach a decision, the chairperson of the board shall assign a third member whose determination is controlling and is the final decision of the appeal board. *Id.*

Board member Wilcox refused to address whether plaintiff established that Angora was an employer subject to the workers' compensation act because the issue had not been raised before the referee or the appeal board. Member Wilcox then ruled that the referee had erroneously ordered the fund to pay its portion of the benefits awarded directly to plaintiff. However, member Wilcox decided to affirm the referee's decision insofar as it imposed liability on Angora.

On December 14, 1988, the appeal board entered two orders, one of which affirmed the referee's decision as to Angora but modified the amount of plaintiff's weekly compensation award. The other order reversed the referee's decision with respect to the fund and dismissed the fund from the action.

On January 3, 1989, plaintiff applied for leave to appeal the order dismissing the fund. On June 23, 1989, a panel of this Court entered an order granting leave and directing the parties to address the issue whether plaintiff established that Angora was subject to the workers' compensation act.

I

On appeal, plaintiff first argues that she established by a preponderance of the evidence that Angora was an agricultural employer subject to the provisions of the workers' compensation act. However, the Second Injury Fund concedes that Angora satisfied the statutory requirements and was an agricultural employer subject to the act. See MCL 418.115(d); MSA 17.237(115)(d); MCL 418.155(1); MSA 17.237(155)(1). Since the parties do not dispute that Angora was an employer under the auspices of the act and Angora never responded to the contrary, we do not see a conflict necessitating our resolution. Therefore, we decline to undertake any further review of this issue.

II

Plaintiff next contends that the appeal board erred in dismissing the fund and ruling that MCL 418.372(1); MSA 17.237(372)(1) precluded the fund from paying compensation benefits directly to plaintiff. We disagree.

Our review of a Workers' Compensation Appeal Board's decision is limited to questions of law, and findings of fact are conclusive in the absence of fraud if there is any competent evidence to support them. Const 1963, art 6, § 28; *Aquilina v General Motors Corp*, 403 Mich 206, 213, n 4; 267 NW2d 923 (1978). However, the appeal board's

decision may be reversed if the board operated within the wrong legal framework or its decision was based on erroneous legal reasoning. *Juneac v ITT Hancock Industries,* 181 Mich App 636, 639; 450 NW2d 22 (1989).

In the instant case, the statute at issue, MCL 418.372(1); MSA 17.237(372)(1), provides:

> If an employee was engaged in more than 1 employment at the time of a personal injury or a personal injury resulting in death, the employer in whose employment the injury or injury resulting in death occurred is liable for all the injured employee's medical, rehabilitation, and burial benefits. Weekly benefits shall be apportioned as follows:
>
> (a) If the employment which caused the personal injury or death provided more than 80% of the injured employee's average weekly wages at the time of the personal injury or death, the insurer or self-insurer is liable for all of the weekly benefits.
>
> (b) If the employment which caused the personal injury or death provided 80% or less of the employee's average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits. The insurer or self-insurer has the obligation to pay the employee or the employee's dependents at the full rate of compensation. *The second injury fund shall reimburse the insurer or self-insurer quarterly for the second injury fund's portion of the benefits due the employee or the employee's dependents.* [Emphasis added].

The emphasized language in subsection (1)(b)

plainly states that the Second Injury Fund "shall reimburse the *insurer* or *self-insurer.*" Where a statute is clear and unambiguous, judicial construction or interpretation is precluded. *Land v George Schmidt Co,* 122 Mich App 167, 170; 333 NW2d 30 (1982), lv den 417 Mich 1083 (1983). In addition, Michigan has long recognized the rule of statutory construction that the express mention of certain things implies the exclusion of other similar things. *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971). Therefore, we are compelled to abide by the language of MCL 418.372(1)(b); MSA 17.237(372)(1)(b) and rule that payments by the fund cannot be made *directly* to a claimant (plaintiff) or an uninsured company (Angora). The statute clearly requires that payments shall be made only to an employer's insurer or a self-insured employer.

While the above conclusion leads to an unfortunate result for plaintiff, we do not believe it is within our power to redefine the clear language of the statute. It is within the purview of the Legislature to effectuate any changes. As a factual matter, the Legislature has taken such steps through House Bill No. 5103, which addresses situations like the instant case where an employee of an uninsured employer cannot collect benefits under the workers' compensation act. This proposed legislation would give employees of uninsured employers protection under the act.

Since the Legislature has already commenced action, we believe that we should defer to the legislative process. Therefore, we find that MCL 418.372(1)(b); MSA 17.237(372)(1)(b), in its present form, precluded the fund from making payments *directly* to plaintiff. Board member Wilcox was correct in his ruling that the referee erroneously

ordered the fund to pay its portion of benefits to plaintiff.

In light of the foregoing conclusion, we affirm the December 14, 1988, order of the appeal board dismissing the Second Injury Fund.

Affirmed.